

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| LANCASTER HOSPITAL CORPORATION, § <br> *formerly d/b/a Springs Memorial Hospital*, § <br>    Plaintiff, § <br> § <br> vs. § <br> § <br> Xavier Becerra, *Secretary, U.S.* § <br> *Department of Health and Human Services*, § <br>    Defendant. § <br> § | Civil Action No.: 0:19-01857-MGL |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff Lancaster Hospital Corporation, formerly d/b/a Springs Memorial Hospital (Springs), brought this action seeking review of the final decision of the Provider Reimbursement Review Board (PRRB) against Alex M. Azar II (Azar), Secretary of the United States Department of Health and Human Services (HHS). Although Springs named Azar, the former Secretary of HHS, as the defendant when it filed the complaint, the Court takes judicial notice, pursuant to Fed. R. Evid. 201, that Xavier Becerra is currently the Secretary of HHS. Therefore, pursuant to Fed. R. Civ. P. 25(d), the Court will direct the Clerk's Office to substitute Xavier Becerra, Secretary of HHS, as the defendant in this case.

The suit, however, is actually against HHS. *See generally Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a [federal] official in his or her official capacity

is not a suit against the official but rather is a suit against the official's office."). The Court has jurisdiction over this matter under 28 U.S.C. § 1331.

Pending before the Court are two motions for summary judgment: one from Springs and one from HHS. Having considered the motions, the responses, the replies, the record, and the applicable law, it is the judgement of the Court Springs's motion for summary judgment will be denied and HHS's motion for summary judgment will be granted.

## II.     FACTUAL AND PROCEDURAL HISTORY

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., commonly known as the Medicare Act, established a system of medically funded health insurance for elderly and disabled persons. Under the Medicare Act, certain healthcare providers are eligible for reimbursement by HHS for services furnished to Medicare beneficiaries.

Under this reimbursement program, healthcare providers submit their yearly cost reports to a Medicare Administrative Contractor (MAC) that acts as an agent for HHS. After the MAC reviews the healthcare provider's cost reports to determine the amount due for reimbursement, it issues a Notice of Program Reimbursement (NPR). If a healthcare provider is dissatisfied with the NPR, it may appeal to the PRRB, an adjudicative body in HHS, within 180 days of issuance. The PRRB's decision is subject to judicial review in federal district court.

Springs is an acute care hospital located in Lancaster, South Carolina. Springs operates an inpatient rehabilitation facility (IRF) and skilled nursing facility (SNF) that provide medical services primarily to Medicare beneficiaries. During the relevant timeframe, Medicare reimbursed IRF and SNF providers for their reasonable costs in providing services, as opposed to a fixed fee-per-service payment schedule.

Beginning in 1994, Springs entered into two separate contracts with RehabCare, Inc. (RehabCare) to provide program management and therapy services for its IRF and SNF. Under the terms of these contracts, RehabCare acted as a turn-key subcontractor, managing every single aspect of the IRF and SNF on behalf of Springs. As to the IRF contract, Springs agreed to pay RehabCare a per-patient-per-day rate for any and all services provided to its patients. And, regarding the SNF contract, Springs agreed to pay RehabCare a per-patient-per-day rate for program management services, and an hourly rate for direct therapy services.

To assist Palmetto GBA (Palmetto), the MAC in this case, in its audit of Springs's IRF cost reports, RehabCare would provide a breakdown of its fiscal year (FY) charges to Springs into two basic components: program management costs and therapy costs. So, if Springs paid RehabCare $1,500,000 in a fiscal year for services provided to its IRF patients, RehabCare would separate, into a detailed financial report, the dollar amounts for program management fees and direct therapy costs. This method of reporting is called a Value Quantification Model (VQM). Palmetto would then take the VQM and use RehabCare's payroll records to audit the program management and therapy costs for reasonableness.

These IRF and SNF contracts with RehabCare remained in force through Springs's FY 2000, and the type and intensity of therapy services provided by RehabCare to Springs's patients over FYs 1997–2000 remained, according to Springs, consistent.

Palmetto audited Springs's Medicare reimbursement cost reports for its IRF and SNF's FYs 1997–2000 and disallowed all the reasonable costs it claimed in these eight cost reporting periods. Springs appealed Palmetto's decision to disallow these eight cost reports to the PRRB. While the case was on appeal to the PRRB, Springs and Palmetto settled the IRF and SNF's FYs 1999 cost reporting period. Accordingly, after that settlement, six disputed cost reporting periods

remained before the PRRB: three as to Springs's IRF cost reports and three as to Springs's SNF cost reports, all for FYs 1997, 1998, 2000.

The PRRB, on April 30, 2019, determined: "[Palmetto]'s adjustments to remove *all* of the costs/charges for RehabCare services from [Springs]'s [FY] 1997 cost reports as it relates to the IRF subprovider unit were proper as [Springs] did not submit sufficient documentation to demonstrate these costs were reasonable." PRRB's Decision at 2, A.R. at 0007. As to the other five costs reports, the PRRB remanded them to Palmetto because it found sufficient auditable documentation existed to allow at least some of Springs's costs to be reimbursed.

According to the PRRB, it upheld Palmetto's disallowance of Springs's IRF cost report for FY 1997 because Springs "did not have the RehabCare payroll information [for IRF FY 1997,] and could only estimate RehabCare's therapy salaries and hours for" that year. *Id.* at 8, A.R. at 0013. The PRRB also noted Springs failed to "submit FY 1997 salary and hours documentation for the [program] management positions related to the RehabCare contract" as well, including the positions of "Program Director, Clinical Coordinator, Community Relations Coordinator, Secretary, Social Worker and Admission Coordinator." *Id.* As is relevant to this underlying dispute, RehabCare's 1997 VQM totaled approximately $1,383,000 and listed the program management costs as roughly $750,000, and the therapy costs as around $633,000.

The CMS Administrator declined to review the PRRB's decision, and it became final. Accordingly, Springs appealed the PRRB's decision to this Court by filing this action and subsequently filed the instant motion for summary judgment, after which HHS filed its motion for summary judgment. HHS's motion contained its response to Springs's motion. Thereafter, Springs filed its response to HHS's motion, as well as replied to HHS's response. HHS then replied to Springs's response.

Springs requests this Court enter an order setting aside part of the PRRB's decision that denied its Medicare reimbursement claim for reasonable costs in providing IRF services to Medicare beneficiaries for its FY 1997.  HHS, on the other hand, requests the Court affirm the decision of the PRRB.

Springs, in its motion, requested an oral argument.  Inasmuch as the parties' briefs adequately informed the Court of their positions, the Court exercises its discretion to adjudicate the motions without a hearing.  *See* S.C. District Court Local Rule 7:08 ("Hearings on motions may be ordered by the [C]ourt in its discretion.  Unless so ordered, motions may be determined without a hearing.").  Accordingly, the Court, having been fully briefed on the relevant issues, will now adjudicate the motions.

### III.    STANDARD OF REVIEW

"A decision of the [PRRB] shall be final unless [HHS], on [its] own motion, and within [sixty] days after the provider of services is notified of the [PRRB]'s decision, reverses, affirms, or modifies the [PRRB]'s decision." 42 U.S.C. § 1395oo(f)(1).  "Providers shall have the right to obtain judicial review of any final decision of the [PRRB], or of any reversal, affirmance, or modification by [HHS], by a civil action commenced within [sixty] days of the date on which notice of any final decision by the [PRRB] of any reversal, affirmance, or modification by [HHS] is received." *Id*.  The district court reviews the PRRB's decision under the standards of the APA. *Id*.

"[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "The APA commands reviewing courts to 'hold unlawful and set aside' agency action where it is

'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . [or] unsupported by substantial evidence . . . ." *Abraham Lincoln Memorial Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012) (quoting 5 U.S.C. § 706(2)).  A final agency determination is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). To deem an agency action arbitrary and capricious, its decision must be "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*  A court "will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974).

The substantial evidence standard of review "requires the district court to determine whether the agency decision *on direct review* is supported by substantial evidence." *Int'l Rehab. Sci. Inc. v. Sebelius*, 688 F.3d 994, 1002 (9th Cir. 2012).  Substantial evidence fails to "give the district court license to compare the agency decision on direct review with other agency decisions not on review and determine which is supported by more substantive evidence" as "that would be tantamount to de novo review, which is not the standard." *Id.*  "[S]ubstantial evidence [is] 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Almy v. Sebelius*, 679 F.3d 297, 301 (4th Cir. 2012) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

6

In an APA case such as this, summary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is otherwise consistent with the APA.

### IV. DISCUSSION AND ANALYSIS

Before the Court considers the parties' arguments, it will provide a brief primer on the Medicare reimbursement process for reasonable costs incurred by a Medicare beneficiary provider such as Springs. The Medicare statute authorizes reimbursement to Medicare beneficiary providers for the "reasonable costs of such services[.]" 42 U.S.C. § 1395f(b)(1). "The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of the incurred cost found to be unnecessary in the efficient delivery of needed health services[.]" *Id.* § 1395x(v)(1)(A).

The Medicare statute provides "no payments shall be made to any [Medicare] provider unless it has furnished such information as [HHS] may request [to] determine the amounts due such provider under this part for the period with respect to which the amounts are being paid or any prior period." *Id.* § 1395g(a).

HHS has promulgated regulations governing the submission of annual provider cost reports and the records used to support them. These regulations require "providers maintain sufficient financial records and statistical data for proper determination of costs payable under the program." 42 C.F.R. § 413.20(a). "Standardized definitions, accounting, statistics, and reporting practices that are widely accepted in the hospital and related fields are followed." *Id.*

In particular, the data submitted to the MAC "must be based on [the provider's] financial and statistical records which must be capable of verification by qualified auditors." *Id.* § 413.24(a).

7

Thus, the data must be "capable of being audited" and be "accurate and in sufficient detail to accomplish the purposes for which it is intended." *Id.* § 413.24(c). The purpose of using the provider's financial and statistical records to determine reasonable cost reimbursement is "to arrive at equitable and proper payment [to providers] for services to" Medicare beneficiaries. *Id.* § 413.20(a).

Springs, in its motion, makes three arguments in support of its position the PRRB's decision was incorrect: (1) the PPRB acted arbitrarily and capriciously, (2) the PRRB's decision was unsupported by law, and (3) the PRRB's decision was unsupported by substantial evidence. HHS, in its motion, argues the PRRB's "decision is not arbitrary nor capricious but is supported by the substantial evidence." HHS's Mot. for Summ. J. at 12.

> A.   *Whether the PRRB's decision as to Springs's IRF's FY 1997 cost report is arbitrary and capricious*

Springs makes three primary arguments supporting its contention the PRRB's decision is arbitrary and capricious. As to the first, Springs avers the PRRB's decision arbitrarily ignored voluminous information that supported a finding its costs were reasonable.

For example, Springs notes it offered Palmetto "medical records for every [IRF] patient, which included admission criteria, treatment protocols, diagnoses, lengths of stay, and the number of therapy units provided to each patient." Springs's Mot. for Summ. J. at 24. And, according to Springs, it provided Palmetto access to its Provider Statistical & Reimbursement Report (PS&R) data "to support the volume of therapy services provided (and, indirectly, the number of therapy hours provided to Medicare beneficiaries) and also gave [Palmetto] access to direct medical records that could be used to verify the number of therapy hours provided." *Id.* (internal citations omitted).

8

These PS&R records, according to Springs, "offered to show, as an alternative to payroll records, the volume of work that RehabCare did to back into what is most important about . . . payroll data—it shows the number of hours worked by the [therapists on behalf of Springs's Medicaid beneficiaries]." *Id.* And, Springs opines, "PS&R data is presumed to be accurate, and can be relied upon by [HHS], unless the provider furnishes documentation to the contrary." Springs's Reply at 15.

HHS, in its motion, contends the PRRB's decision is not arbitrary and capricious because Springs failed to demonstrate it provided Palmetto adequate financial and statistical records "capable of being audited[.]" 42 C.F.R. § 413.24(c).

In particular, HHS posits "the record contains no documentation that would allow the auditors to determine whether [the amount Springs claims it paid RehabCare] was reasonable." HHS's Mot. for Summ. J. at 9. Regarding the VQM, HHS notes "[w]hile this document breaks down the cost of the contract based upon employees, such as physical therapist costs and therapist assistant costs, it is not auditable documentation itself, but a model that attempts to use documentation to separate therapy charges from [program] management charges." *Id.* at 10.

And, as to the PS&R data, HHS contends "it does not contain salary information or other information that the PRRB found was necessary to conduct an audit of the contract costs" and the PS&R data "relates only to medical care costs such as therapy[,]" not program management costs. HHS's Reply at 8. Thus, according to HHS, even assuming the PS&R data provided auditable documentation, which it believes it fails to do, the data provides zero input as to the program management costs.

To recap, as previously discussed, for Springs's IRF's FYs 1998, 1999, and 2000 cost reporting periods, it provided Palmetto, among other things, RehabCare's payroll records for the

9

employees that serviced Springs's patients. Palmetto used these payroll records to audit the VQM submitted by RehabCare to determine their reasonableness. But, for Springs's IRF's FY 1997 cost reporting period, it was unable to obtain RehabCare's payroll records for Palmetto to utilize for VQM auditing purposes.

Although Springs argues it provided "voluminous, and more than sufficient, documentation [to demonstrate] the reasonableness of its costs for the [IRF's FY 1997 cost reporting period]," Springs's Mot. for Summ. J. at 27, it failed to summarize and synthesize the information into an auditable form for use by Palmetto. For example, as noted by HHS, Springs "never attempted itself to support the 1997 costs with specific medical records, but left that job to the auditors, which was not practical." HHS's Mot. for Summ. J. at 18 (citation omitted). Palmetto's auditor "testified that the amount of medical data provided [by Springs] was overwhelming and couldn't be audited in a practical manner" and "the medical files [sent by Springs in an electronic format] were hard to open[.]" *Id.* at 12. The burden of proof of the statutes and regulations at issue in this case "remains on the provider." *Mercy Home Health v. Leavitt*, 436 F.3d 370, 379 (3d Cir. 2006).

Consequently, the regulations governing the submission of annual provider cost reports and the records used to support them are clear: the data must be capable of verification by qualified auditors. In the instant case, Springs's failure to provide RehabCare's payroll records to support the VQM made auditing the VQM impossible. "The consequence of failure to provide auditable records is [] specifically provided for in the Medicare statute at 42 U.S.C. § 1395g(a)" and this section "directs that 'no [Medicare reimbursement] payments shall be made to any provider unless it has furnished some information as [HHS] may request in order to determine the amounts due such provider[.]'" *Daviess County Hosp. v. Bowen*, 811 F.2d 338 at 346 (7th Cir. 1987) (quoting

10

42 U.S.C § 1395g(a)). "Indeed, the plain language of § 1395g(a) seems to *require* that [HHS] deny reimbursement unless [it] gets the information [it] asks for." *Id.* (footnote omitted). Thus, for all these reasons, the Court will reject Springs's argument the PRRB's decision was arbitrary and capricious.

Turning to Springs's second argument, it contends it demonstrated, pursuant to HHS's Provider Reimbursement Manual (PRM), its costs were reasonable, and the PRRB's decision to ignore the PRM's instructions as to the type of evidence used to support the reasonableness of costs was arbitrary.

HHS avers, notwithstanding its belief the PRM is inapplicable to Springs's contractual agreement with RehabCare, the "PRRB's decision was based upon Springs's failure to" provide auditable data. HHS's Mot. for Summ. J. at 17.

Here, the Court's analysis is the same as in the preceding paragraphs. Whether the PRM is applicable to Springs's contractual agreement with RehabCare fails to override the Medicare regulation requiring the data submitted to Palmetto must be "capable of being audited[.]" 42 C.F.R. § 413.24(c). And, as discussed above, Springs failed to present auditable records to Palmetto to meet the mandatory requirements of this regulation. Consequently, Springs's inability to provide data "capable of being audited[,] *Id.* § 413.24(c), proves fatal to its argument the PRRB's decision is arbitrary.

Lastly, Springs contends the PRRB "acted arbitrarily by denying [its] claim for payment for 1997 after allowing [] materially identical claims for other years." Springs's Reply at 8 (emphasis and capitalization modified).

HHS, in its motion, posits FY 1997 is unique and distinct from FYs 1998–2000, as RehabCare provided payroll data for Palmetto to audit the VQM's for all fiscal years except 1997.

11

Thus, according to HHS, the PRRB's decision as to Springs's IRF's FY 1997 "is not arbitrary nor capricious but is supported by the substantial evidence." HSS's Mot. for Summ. J. at 12.

Here, the Court agrees with HHS for the same reasons as articulated above. The primary issue before the PRRB was whether Springs's records were "capable of being audited[,]" 42 C.F.R. § 413.24(c). Because Springs failed to present auditable records pursuant to the Medicare regulations, the Court is unable to conclude the PRRB's decision is arbitrary and capricious.

### B.     *Whether the PRRB's decision as to Springs' IRF's FY 1997 cost report is contrary to law*

Springs argues HHS "entirely ignored [the] legal presumption" that a Medicare "providers' actual costs are presumed to be its reasonable costs in providing services to Medicare beneficiaries." Springs's Mot. for Summ. J. at 18.

HHS notes, as the Court concluded above, "the controlling regulation [in this case] is 42 C.F.R. § 413.24," HHS's Mot. for Summ. J. at 2, especially subsection c, that requires the cost information be "capable of being audited[.]" 42 C.F.R. § 413.24(c). And, according to HHS, Springs failed to comply with this regulation.

Here, inasmuch as the issue before the Court is whether the data provided by Springs to Palmetto is "capable of being audited[,] *Id.* § 413.24(c), and Springs failed to provide auditable records to Palmetto, the Court concludes the PRRB's decision is supported by law.

### C.     *Whether the PRRB's decision is supported by substantial evidence*

Springs presents two arguments in support of its contention the PRRB's decision is unsupported by substantial evidence. As to the first, Springs posits the PRRB ignored the voluminous amount of documentation provided by it to demonstrate its costs were reasonable. These documents, Springs avers, demonstrate the PRRB's decision is unsupported by substantial evidence.

12

HHS contends the data provided by Springs, regardless of its volume, must be "capable of being auditable[,] *Id.* § 413.24(c), and it failed to meet such a threshold.

Here, a review of the record leads the Court to conclude the PRRB's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co.*, 305 U.S. at 229.  In the Court's review of whether an agency's decision is supported by substantial evidence, the Court does "not consider the case de novo with respect to the Administrator, resolve conflicts in the evidence, or decide questions of credibility." *Mercy*, 436 F.3d at 380.  The Medicare statute requires providers such as Springs submit data "capable of being auditable[,] 42 C.F.R. § 413.24(c), and substantial evidence supports the PRRB's decision to disallow Springs's IRF's FY 1997 costs for failure to provide auditable data.

Turning to Springs's second argument, it posits the PRRB's decision is unsupported by substantial evidence because it ignored 42 C.F.R. § 413.9(c)(2), as that regulation, according to Springs, is the "only substantive standard for payment that governs here[.]"  Springs's Reply at 12.

HHS contends the majority of Springs's motion for summary judgment "addresses the issue of whether or not the costs for these services 'were substantially out of line' with similar costs from its competitors pursuant to 42 C.F.R. § 413.9" but nothing in Section 413.9 "states that [Springs] does not need adequate documentation that is required by" the Medicare statute."  HHS's Mot. for Summ. J. at 2, 17.  Thus, according to HHS, the PRRB's decision is supported by substantial evidence.

Here, Springs's argument fails to address the issue before the Court: whether the PRRB's decision is supported by substantial evidence in light of Springs's failure to comply with 42 C.F.R.

13

§ 413.24(c). As noted in the preceding paragraphs, Springs's failure to provide data "capable of being auditable[,] § 413.24(c), proves fatal to its argument.

Accordingly, for these reasons, the Court concludes the PRRB's decision is not arbitrary and capricious, contrary to law, or unsupported by substantial evidence. In light of these conclusions, the Court will deny summary judgment as to Springs and grant it as to HHS.

## V.    CONCLUSION

For the reasons stated above, it is the judgment of the Court Springs's motion for summary judgment is **DENIED** and HHS's motion for summary judgment is **GRANTED.**

And, the Court directs the Clerk's Office to substitute Xavier Becerra, Secretary of HHS, as the defendant in this case.

 **IT IS SO ORDERED.**

Signed this 8th day of April 2021, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
